2024R00796-DAF-ETW

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 24-528 (ESK) |
| v. | : | |
| | : | 18 U.S.C. § 1349 |
| JOSHUA FELDBERGER | : | |

## SUPERSEDING INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States charges:

### COUNT 1
### (Conspiracy to Commit Bank Fraud)

1.  At all times relevant to this Superseding Information:

**Mortgage Lending**

a.  Mortgage loans were loans made by banks and other financial institutions to borrowers: (a) in connection with the purchase of real estate; or (b) in connection with the refinancing of real estate. Mortgage loans were secured by the real estate property such that if the borrower defaulted on the loan, the lender would have the ability to seek foreclosure of the real estate property securing the loan.

b.  A mortgage loan borrower typically applied for a mortgage loan through a mortgage lender or a mortgage originator. If a borrower applied directly with a mortgage lender, the borrower would provide documentation directly to the mortgage lender and the mortgage lender would directly fund the loan. If a borrower applied with a mortgage originator, sometimes the mortgage originator

2024R00796-DAF-ETW

would make the initial loan to the borrower and then sell the loan to a mortgage lender after a short period of time. Other times, the mortgage originator would obtain and verify the relevant information for a mortgage lender, and then the mortgage lender would issue the mortgage loan directly to the borrower. The information submitted by a borrower was material to the mortgage lender's decision whether or not to extend a mortgage loan.

        c.     A mortgage loan typically was closed by a settlement agent. The settlement agent was responsible for receiving monetary instruments and funds provided by the borrower and mortgage funds from the lender to the title company's escrow account, and, when authorized by the parties to the transaction and the lender, for disbursing those funds from the escrow account to various individuals and entities, as detailed on the U.S. Department of Housing and Urban Development Settlement Statement (hereinafter "HUD-1 Settlement Statement"). The HUD-1 Settlement Statement detailed the actual disbursement of monies, including mortgage fund loans, to the proper entities and/or individuals. The HUD-1 Settlement Statement was required to accurately disclose the receipt and disbursement of all monies involved in a real estate transaction, including whether any monies were being used to pay off existing loans. The borrower and a representative of the title company typically signed the HUD-1 Settlement Statement affirming that it was true and accurate.

2024R00796-DAF-ETW

## Individuals and Entities

d. Defendant JOSHUA FELDBERGER was a resident of Lakewood, New Jersey. Defendant JOSHUA FELDBERGER owned Settlement Company-1, a title and real estate settlement company located in Lakewood, New Jersey.

e. Arthur Spitzer, who was a co-conspirator but is charged elsewhere, was a resident of Toms River, New Jersey

f. Mendel Deutsch, who was a co-conspirator but is charged elsewhere, was a resident of Toms River, New Jersey.

g. 306 Malcolm NY LLC was a New York entity controlled by Mendel Deutsch (the "Deutsch LLC").

h. The "Malcolm X Properties" were three mixed-use commercial and residential buildings located on Malcolm X Boulevard in Brooklyn, New York.

i. Bank-1 was engaged in the business of making mortgage loans and therefore was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

j. Bank-2 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

k. Bank-3 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

2024R00796-DAF-ETW

    l.    Deutsche Equity LLC was a New York company controlled by Mendel Deutsch. Deutsche Equity LLC had a bank account at Bank-2, whose sole signatory was Deutsch.

    m.    BSD Realty Holdings, Inc. was a New Jersey company controlled by SPITZER. BSD Realty Holdings, Inc. had a bank account at Bank-3, and SPITZER was a signatory on this account.

    n.    Company-1 was a New York limited liability company.

    o.    Individual-1 was a resident of New York.

    p.    The Fedwire Funds Service ("Fedwire") was a real-time gross settlement system that enabled participants to transfer funds from one financial institution to another financial institution. Every Fedwire funds transfer involved an exchange of electronic communications between Federal Reserve facilities in New Jersey and Texas.

## The Conspiracy

2.    From in or about November 2019 through in or about July 2020, in Ocean County in the District of New Jersey, and elsewhere, the defendant,

**JOSHUA FELDBERGER,**

did knowingly and intentionally conspire and agree with Arthur Spitzer, Mendel Deutsch, and others to execute and attempt to execute a scheme and artifice to defraud a financial institution, Bank-1, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of,

4

2024R00796-DAF-ETW

Bank-1, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

### Goal of the Conspiracy

3. The goal of the conspiracy was for defendant JOSHUA FELDBERGER, Arthur Spitzer, and Mendel Deutsch to financially enrich themselves and satisfy outstanding debts by fraudulently obtaining a $4,500,000 mortgage loan from Bank-1 that was secured by the Malcolm X Properties.

### Manner and Means of the Conspiracy

4. It was part of the conspiracy that in or around July 2019, 306A Malcolm X Blvd LLC, 306 Malcolm X Blvd LLC, and 308 Malcolm X Blvd LLC (the "Malcolm X Blvd LLCs"), purchased the Malcolm X Properties. No mortgage loan was obtained in connection with the purchase.

5. It was further part of the conspiracy that the operating agreements for the Malcolm X Blvd LLCs provided that the sole member of each entity was Company-1. The operating agreements further provided that Individual-1 was an authorized signatory who was authorized only to execute documents in connection with the July 2019 purchase of the Malcolm X Properties.

6. It was further part of the conspiracy that between in or about November 2019 and in or about March 2020, Arthur Spitzer and Mendel Deutsch engaged in discussions with representatives of the Malcolm X Blvd LLCs about purchasing the Malcolm X Properties from the Malcolm X Blvd LLCs. These

2024R00796-DAF-ETW

discussions did not result in any agreement to sell the Malcolm X Properties to Spitzer and Deutsch.

7.  It was further part of the conspiracy that notwithstanding the lack of agreement to sell the Malcolm X Properties to Spitzer and Deutsch, Spitzer and Deutsch devised and executed a scheme to obtain a mortgage loan secured by the Malcolm X Properties by making it appear to Bank-1 as if Spitzer actually owned the Malcolm X Properties and that Spitzer had agreed to sell the Malcolm X Properties to an entity controlled by Deutsch (the Deutsch LLC).

8.  It was further part of the conspiracy that Mendel Deutsch, through the Deutsch LLC, applied for a mortgage loan from Bank-1 in connection with his purported purchase of the Malcolm X Properties.

9.  It was further part of the conspiracy that Spitzer and Deutsch engaged Settlement Company-1 to be the title and settlement company for the transaction conveying the Malcolm X Properties to the Deutsch LLC and in which Deutsch obtained a mortgage loan from Bank-1. Defendant FELDBERGER oversaw Settlement Company-1's activities in connection with this transaction. Defendant FELDBERGER and other Settlement Company-1 employees were located in New Jersey when they worked on the Malcolm X transaction.

10. It was further part of the conspiracy that defendant JOSHUA FELDBERGER, Spitzer, and Deutsch made or caused to be made material misrepresentations to Bank-1 in connection with Deutsch's application for a mortgage loan secured by the Malcolm X Properties. For example, between in or

6

2024R00796-DAF-ETW

about January 2020 and in or about June 2020, defendant FELDBERGER created and caused to be created letters stating that Deutsch already had deposited sizable funds into Settlement Company-1's escrow account to be used towards the purchase of real estate properties. Spitzer and Deutsch caused these letters to be sent to Bank-1 to support Deutsch's application for a mortgage loan secured by the Malcolm X Properties. In fact, Deutsch had not deposited the stated funds into Settlement Company-1's escrow account.

11. It was further part of the conspiracy that in or about June 2020, Spitzer signed documents on behalf of the Malcolm X Blvd LLCs to obtain a short-term loan of more than $1,000,000. The loan documents were signed by Spitzer on behalf of the Malcolm X Blvd LLCs even though Spitzer was not a member of the Malcolm X Blvd LLCs and had no authority to borrow money on behalf of the Malcolm X Blvd LLCs. The short-term loan documents were notarized by defendant FELDBERGER.

12. It was further part of the conspiracy that defendant FELDBERGER, Spitzer, and Deutsch caused to be created, and used, documents containing the forged signature of Individual-1 to facilitate the transaction:

> a. On or about June 11, 2020, Deutsch emailed a "time of essence" letter to his mortgage broker, which was then forwarded to Bank-1. The "time of essence" letter stated that the seller of the Malcolm X Properties was ready to close the sale of the Malcolm X Properties

2024R00796-DAF-ETW

to Deutsch. The "time of essence" letter was purportedly signed by Individual-1 but was not actually signed by Individual-1.

b. Spitzer and defendant FELDBERGER used a document, dated August 2019, purportedly assigning membership in the Malcolm X Blvd LLCs from Individual-1 to Spitzer (the "Fake Assignment"). The Fake Assignment made it appear as if Spitzer owned the Malcolm X Properties and therefore could "sell" the Malcolm X Properties to Deutsch. The Fake Assignment was not actually signed by Individual-1 and was created, not in August 2019, but rather, on a date after the Malcolm X transaction already had closed.

13. It was further part of the conspiracy that according to the HUD-1 Settlement Statement, the purchase price for the purported sale of the Malcolm X Properties from Spitzer to Deutsch was $6,000,000, the amount of the loan from Bank-1 was $4,500,000, and Deutsch was required to bring approximately $2,300,000 to the closing.

14. It was further part of the conspiracy that on or about June 25, 2020, defendant FELDBERGER caused a Settlement Company-1 employee to falsely state in an email sent to a representative of Bank-1 that Deutsch already had provided the required funds to Settlement Company-1. Bank-1 then wired the loan proceeds of approximately $4,061,368.47 to Settlement Company-1 on or about June 25,

8

2024R00796-DAF-ETW

2020. In fact, Settlement Company-1 had not received the required funds from Deutsch on June 25, 2020.

15. It was further part of the conspiracy that after Settlement Company-1 received the mortgage proceeds from Bank-1, Spitzer, Deutsch, and defendant FELDBERGER engaged in a series of monetary transactions that had the effect of allowing Spitzer and Deutsch to purchase the Malcolm X Properties and obtain the Bank-1 mortgage loan without using any of their own money, as set forth below:

    a. On or about June 26, 2020, defendant FELDBERGER wired approximately $1,000,000 of the Bank-1 mortgage proceeds to Spitzer's company, BSD Realty Holdings, Inc. These funds were then wired from BSD Realty Holdings, Inc. to Deutsch's company, Deutsche Equity, which then sent them by wire and check back to Settlement Company-1 as a portion of Deutsch's approximately $2,300,000 down payment for the same transaction for which the mortgage loan was being obtained. Specifically, Spitzer, Deutsch, and defendant FELDBERGER engaged in the following monetary transactions:

| Approximate Date | Approximate Amount | Description |
| --- | --- | --- |
| 6/26/2020 | $800,000 and $200,000 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account at Bank-3 to Spitzer's BSD Realty Holdings bank account at Bank-3. |
| 7/2/2020 | $500,000, $300,000, and $200,000 | Interstate wire, sent through the Fedwire system, from Spitzer's BSD Realty Holdings bank account at Bank-3 to Deutsch's Deutsche Equity bank account at Bank-2. |

2024R00796-DAF-ETW

| 7/2/2020 | $300,000 and $200,000 | Interstate wire, sent through the Fedwire system, from Deutsch's Deutsche Equity bank account at Bank-2 to Settlement Company-1's escrow account at Bank-3. |
| --- | --- | --- |
| 7/2/2020 | $411,348,80 | Check from Deutsch's Deutsche Equity bank account at Bank-2, signed by Deutsch, and deposited into Settlement Company-1's escrow account at Bank-3. |

b. On or about July 2, 2020, Spitzer and Deutsch caused another individual, Individual-2, to wire the balance of Deutsch's down payment—approximately $1,400,000—to Settlement Company-1. On or about July 2, 2020, defendant FELDBERGER wired a portion of the Bank-1 mortgage proceeds to BSD Realty Holdings, Inc. Spitzer subsequently used these mortgage proceeds to repay Individual-2. Specifically, Spitzer, Deutsch, and defendant FELDBERGER engaged in the following monetary transactions:

| Approximate Date | Approximate Amount | Description |
| --- | --- | --- |
| 7/2/2020 | $1,400,000 | Interstate wire, sent through the Fedwire system, from Individual-2's bank account at Bank-2 to Settlement Company-1's escrow account at Bank-3. |
| 7/2/2020 | $1,000,000 and $1,250,000 | Interstate wires, sent through the Fedwire system, from Settlement Company-1's escrow account at Bank-3 to Spitzer's BSD Realty Holdings bank account at Bank-3. |
| 7/3/2020; 7/6/2020; 7/24/2020; 7/28/2020 | $250,000; $500,000; $50,000; $75,000 | Interstate wires, sent through the Fedwire system, from Spitzer's BSD Realty Holdings bank account at Bank-3 to Individual-2's bank account at Bank-2. |

16. It was further part of the conspiracy that the proceeds of the Bank-1 mortgage loan were disbursed for the benefit of Spitzer, Deutsch, and defendant

2024R00796-DAF-ETW

FELDBERGER. As described above, a significant portion of the Bank-1 mortgage proceeds was used to fund Deutsch's down payment. Approximately $100,000 of the proceeds was disbursed to a relative of defendant FELDBERGER to repay a loan he had made to Spitzer. Most of the remaining loan proceeds were disbursed to BSD Realty Holdings Inc. and used for Spitzer's benefit.

17. It was further part of the conspiracy that Spitzer, Deutsch, and defendant FELDBERGER signed the HUD-1 Settlement Statement for the Malcolm X transaction even though it did not disclose the material facts that more than $1,000,000 of the funds were being disbursed to pay off the short-term loan, that Deutsch did not actually provide the required funds to close the transaction on the closing date, and that Spitzer did not actually own the Malcolm X Properties. Bank-1 would not have approved and funded this mortgage loan had it known these facts.

18. It was further part of the conspiracy that Spitzer and Deutsch caused the Bank-1 mortgage loan to default by failing to make the required payments.

In violation of Title 18, United States Code, Section 1349.

2024R00796-DAF-ETW

## FORFEITURE ALLEGATION

1.  The allegations contained in Count 1 of this Superseding Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2.  As a result of committing the conspiracy offense charged in Count 1 of this Superseding Information, defendant JOSHUA FELDBERGER shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property, real or personal, said defendant obtained that constitutes or is derived from proceeds traceable to the offense charged in Count 1 of this Superseding Information.

## SUBSTITUTE ASSET PROVISION

3.  If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred to or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21 United States Code, Section 853(p), as incorporated by Title 18 United States Code, Section 982(a)(1) and Title 28 United States Code, Section 2461(c), to seek forfeiture of any other

2024R00796-DAF-ETW

property of such defendant up to the value of the forfeitable property described above.

                JAMES MCHENRY
                U.S. ASSOCIATE DEPUTY ATTORNEY GENERAL

*Alina Habba*

ALINA HABBA
ACTING UNITED STATES ATTORNEY
SPECIAL ATTORNEY

*Daniel A. Friedman*

Daniel A. Friedman
Assistant United States Attorney

| | |
|---|---|
| Case Number: 24-cr-528 (ESK) | |
| United States District Court District of New Jersey | |
| UNITED STATES OF AMERICA | |
| v. | |
| JOSHUA FELDBERGER | |
| SUPERSEDING INFORMATION FOR | |
| 18 U.S.C. § 1349 | |
| JAMES MCHENRY U.S. ASSOCIATE DEPUTY ATTORNEY GENERAL ALINA HABBA ACTING UNITED STATES ATTORNEY SPECIAL ATTORNEY | |
| DANIEL A. FRIEDMAN ELISA T. WIYGUL ASSISTANT U.S. ATTORNEYS CAMDEN, NEW JERSEY (856) 757-5026 | |